# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NATIONSTAR MORTGAGE, LLC
d/b/a Mr. Cooper, *et al.*,

     *Plaintiffs*,

    v.

RFB PROPERTIES, LLC, *et al.*,

     *Defendants*.

No. 20-cv-02697 (DLF)

## <u>MEMORANDUM OPINION</u>

Plaintiffs Nationstar Mortgage, LLC, the Federal National Mortgage Association ("Fannie Mae"), and the Federal Housing Finance Agency ("FHFA") bring this action against RFB Properties to quiet title on a condominium property.  Before the Court is the plaintiffs' Motion for Summary Judgment, Dkt. 62, and defendant RFB's Motion for Judgment on the Pleadings, Dkt. 63.  For the reasons that follow, the Court will deny RFB's motion and grant the plaintiffs' motion.

## I.      BACKGROUND

### A.      Factual and Statutory Background[1]

This title dispute arises out of the foreclosure sale of condominium Unit 233 (the "Property"), located at 3701 Connecticut Avenue NW in Washington D.C.  Amd. Compl. ¶ 1, Dkt. 39.  The Property is governed by the Connecticut Avenue Condominium Unit Owners'

---

[1] The parties do not dispute the material facts underlying this action, *see* RFB Statement of Material Facts, Dkt. 63-3, and they largely rely on the same records. The plaintiffs also offer two declarations to establish Fannie Mae's ownership of a deed of trust, *see* Dkts. 62-1, 62-2, a fact RFB does not contest. In addition, RFB provides two exhibits from Fannie Mae's internal loan servicing guidance, but because the Court will not reach the field preemption issue, these two exhibits are not material to the Court's opinion.

Association (the "COA") under the association's bylaws. *Id.* ¶¶ 8, 21; *see* Amd. Compl. Ex. A, Dkt. 39-1. In 2001, Deborah Tang obtained title to the Property, and in March 2007, she obtained a $214,500 loan secured by a first deed of trust recorded against the Property. Amd. Compl. ¶ 21. Fannie Mae acquired the loan and the deed of trust and has retained ownership for all times relevant to this dispute. *Id.* ¶ 25. Fannie Mae contracted with Nationstar to act as the loan's servicer, managing day-to-day loan administration responsibilities. *Id.* ¶ 31.

During the 2008 financial crisis, Fannie Mae was placed into the conservatorship of FHFA pursuant to the Housing and Economic Recovery Act, 12 U.S.C. § 4511 *et seq. See* Amd. Compl. ¶ 31. As conservator, FHFA succeeded to "all rights, titles, powers, and privileges of [Fannie Mae]," including to the loan and secured first deed of trust recorded against the Property. *See id.* ¶ 27; 12 U.S.C. § 4617(b)(2)(A). The Housing and Economic Recovery Act provides that "[n]o property" of an FHFA conservatorship "shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [FHFA]." 12 U.S.C. § 4617(j)(3) (the "Federal Foreclosure Bar").

After Tang passed away, her estate conveyed the Property to Marie A. Canada in 2010. *Id.* ¶ 28. As the record owner, Canada was subject to all obligations of ownership, including the payment of assessments under COA bylaws. *See* Amd. Compl. Ex. A. Canada failed to pay the assessments owed. Amd. Compl. ¶ 38. As discussed *infra* § III.A, the parties contest as a legal matter whether Canada's failure to pay six months of assessments owed gave the COA a "super-priority lien" under the D.C. Super-Priority Statute, *see* D.C. Code § 42-1903.13(a). Amd. Compl. ¶ 38; *see also* Opp'n to SJ at 21–22, Dkt. 66. Meanwhile, in April 2012, Canada also defaulted on the Fannie Mae loan. Amd. Compl. ¶ 45. Fannie Mae appointed substitute trustees to administer a potential foreclosure. *Id.*

In August 2014, the COA initiated foreclosure proceedings on what it viewed as its super-priority lien.  Amd. Comp. ¶ 38.  It recorded a Notice of Foreclosure Sale with the D.C. Recorder of Deeds, identifying $46,857.59 in unpaid assessments, interest, large charges, and attorneys' fees owed on the Property.  *Id*.  It also advertised the sale in a newspaper of general circulation and asserted that the Property was being sold subject to "any other superior liens, encumbrances, and municipal assessments."  Amd. Compl. Ex. G, Dkt. 39-7.  The plaintiffs assert that the COA did not seek FHFA's consent to foreclose, Amd. Comp. ¶ 20, and RFB has presented no evidence that FHFA agreed to a sale extinguishing Fannie Mae's secured first deed of trust on the Property.   At the COA foreclosure sale held on September 23, 2014, RFB executed a purchase agreement for the Property for $10,500—approximately 3.7% of its estimated $280,410 market value.  Amd. Compl. ¶ 42–43.  The COA purportedly conveyed the Property to RFB via a trustee's deed, which RFB did not record with the District of Columbia Recorder of Deeds until November 13, 2017. *Id*. ¶ 44.

In December 2016, Fannie Mae initiated foreclosure proceedings on its defaulted loan in the D.C. Superior Court.  *See Federal National Mortgage Ass'n v. Marie A. Canada,* Civil Action No. 2016 CA-009203-R(RP); Amd. Compl. Ex. K, Dkt. 39-11.  At that point, the outstanding debt on the loan was $285,027.76.  Amd. Compl. ¶ 47.  The D.C. Superior Court entered an order granting Fannie Mae's Motion for Default Judgment and Decree of Sale of Real Property.  *See* Amd. Compl. Ex. K.  Pursuant to the court order, Fannie Mae purchased the Property for $224,100 through a credit bid,[2] and the D.C. Superior Court ratified the sale.  Amd. Compl. ¶ 47.

---

[2] When a lender purchases property it is foreclosing upon through a credit bid, it typically waives the amount owed under the indebtedness in exchange for title ownership of the property. *See generally* Edward Brown, *Best Practices for Credit Bidding at Foreclosure*, American Association of Private Lenders, Aug. 19, 2019 (https://aaplonline.com/articles/strategy/best-practices-for-credit-bidding-at-foreclosure/).

**B.    Procedural History**

In September 2020, the plaintiffs filed suit against the COA and RFB properties, seeking a declaratory judgment to void the COA foreclosure sale and to declare Fannie Mae's deed of trust unextinguished.  *See* Dkt. 1.  RFB asserted crossclaims against the COA, including seeking the "return of its purchase price paid for [the] Property" in the event the Court determined the "foreclosure sale was void and unenforceable." RFB First Ans. at 32, Dkt. 15.  Nationstar, FHFA, and the COA filed a putative Rule 41(a)(1)(A)(ii) stipulation of dismissal of all claims against the COA, but the stipulation was not signed by plaintiff Fannie Mae.  *See* Stipulation of Dismissal, Dkt. 30.  The Court subsequently dismissed the plaintiffs' initial complaint without prejudice under Rule 12(b)(6) for failure to assert a valid cause of action.  *See* Dkt. 37 (neither the Declaratory Judgment Act, 28 U.S.C. § 2201, or the Federal Foreclosure Bar, 12 U.S.C. § 4617(j)(3), provide an independent cause of action).

The plaintiffs then filed an amended complaint asserting claims against only RFB Properties.  *See* Amd. Compl.  Count One asserts a quiet-title claim under D.C. common law, on grounds that (1) the Federal Foreclosure Bar preempts any state law permitting foreclosure to extinguish the plaintiffs' secured first deed of trust and (2) the terms of the COA sale were commercially unreasonable.  *Id.* ¶¶ 49–78.  Count Two asserts a quiet-title claim under federal common law on preemption and Supremacy Clause grounds.  *Id.* ¶¶ 79–92.  Count Three asserts an unjust enrichment claim.  *Id.* ¶¶ 93–99.  The plaintiffs request relief in the form of a declaratory judgment "that the COA Sale did not extinguish the Deed of Trust;" that "the Deed of Trust continued as a valid encumbrance against the Property after the COA Sale;" and that "Fannie Mae is the absolute owner of the Property." Am. Compl. at 20 ¶¶ 2–3.  RFB filed an answer and quiet-title counterclaim against the plaintiffs.  *See* RFB Second Ans. at 20, Dkt. 41.  The plaintiffs move for summary judgment on its quiet-title claims and RFB's quiet-title counterclaim.  MSJ at 10.

RFB moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  MJP at 5–6.  Because the parties' Rule 12(c) and Rule 56 motions raise similar arguments and rely on the same record, the Court will consider the motions together.

## II.    LEGAL STANDARDS

Under Rule 12(c) of the Federal Rules of Civil Procedure, "a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "To prevail on a Rule 12(c) motion, '[t]he moving party must show that no material issue of fact remains to be [re]solved and that it is entitled to judgment as a matter of law.'"  *Tapp v. Wash. Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016) (Brown Jackson, J.) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Energy*, 888 F. Supp. 2d 189, 191 (D.D.C. 2012)).  "[I]n deciding a Rule 12(c) motion . . . the [C]ourt relies on 'the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the [C]ourt may take judicial notice.'"  *Id.* (*quoting Allen v. U.S. Dep't of Educ.*, 755 F. Supp. 2d 122, 125 (D.D.C. 2010)).  In evaluating a motion for judgment on the pleadings, the Court applies the same standard that governs motions to dismiss made under Rule 12(b)(6).  *See Garcia v. Stewart*, 531 F. Supp. 3d 194, 203 (D.D.C. 2021).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986).  A "material" fact is one that could affect the outcome of the lawsuit.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party.  *See Liberty Lobby*, 477 U.S. at 248; Holcomb, 433 F.3d at 895. In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving

party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).   A party opposing summary judgment must "substantiate [its allegations] with evidence" that "a reasonable jury could credit in support of each essential element of [its] claims." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015).   The moving party is entitled to summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    ANALYSIS

For the reasons explained below, the Court will deny RFB's motion for judgment on the pleadings and grant the plaintiffs' motion for summary judgment as to the quiet-title claims.   The Court concludes that the Federal Foreclosure Bar preempts D.C. Code § 42-1903.13, and therefore, the COA's foreclosure sale was void *ab initio* and did not extinguish Fannie Mae's deed of trust. The Court further finds that the COA is not a necessary party to the quite-title claims between the plaintiffs and RFB.   RFB remains free to pursue its surviving crossclaim against the COA to recover its purchase price for the Property.

### A.    The Federal Foreclosure Bar Prohibited Extinguishment of Fannie Mae's Secured Deed of Trust

The Federal Foreclosure Bar provides that "[n]o property of the [FHFA] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FHFA]."   12 U.S.C. § 4617(j)(3).   "Property" encompasses not just real property—as RFB argues, *see* Opp'n to SJ at 18–19—but also property interests more broadly, including mortgage liens and loans as well as fee interests.   *See M&T Bank v. Brown*, No. 19-cv-00578 (JMC), 2022 WL 7003740, at *2 (D.D.C. Oct. 12, 2022); *Reverse Mortg. Solutions, Inc. v. Moore, Jr.*, No. 2014-CA-07660-R(RP),

2023 WL 3975088, at *4–7 (D.C. Super. Ct. June 7, 2023); *cf. Simon v. Cebrick*, 53 F.3d 17, 21 (3d Cir. 1995) ("[T]he term 'property' . . . encompasses all forms of interest in property, including mortgages and other liens.").[3]  After Fannie Mae was placed into conservatorship, FHFA succeeded to "all rights, titles, powers, and privileges of" Fannie Mae, including its property interests. 12 U.S.C. § 4617(b)(2)(A)(i).  It is undisputed that Fannie Mae owned the Property deed of trust upon being placed into conservatorship, and federal courts have consistently held that Fannie Mae' mortgage liens constitute conservatorship property protected under the Federal Foreclosure Bar.  *E.g., Berezovsky v. Moniz*, 869 F.3d 923, 932–33 (9th Cir. 2017); *Skylights LLC v. Byron*, 112 F. Supp 3d 1145, 1155 (D. Nev. 2015).  Therefore, the deed of trust was protected conservatorship property under 12 U.S.C. § 4617(j)(3).

        The attachment of COA's super-priority lien and its foreclosure sale without FHFA's consent were unlawful.  The Federal Foreclosure Bar prohibits any "levy, attachment, garnishment, foreclosure, or sale" absent FHFA consent.  12 U.S.C. § 4617(j)(3).  These prohibitions extend to the attachment[4] of involuntary liens to any property encumbered by a Fannie Mae lien, because any such attachment impairs protected conservatorship property.  *See Moore*, 2023 WL 3975088, at *4; *Federal Nat'l Mortg. Ass'n v. Billups*, No. 2015 CA 001764 R(RP),

---

[3] In analyzing the Housing and Economic Recovery Act, courts often rely on precedent interpreting the FDIC receivership statute, which is "analogous" and uses materially identical language.  *E.g., County of Sonoma v. FHFA*, 710 F.3d 987, 993 (9th Cir. 2013); *see* 12 U.S.C. § 1825(b)(2).

[4] RFB argues that the COA's lien attached as of the date of the Condominium Declaration and thus predated the Federal Foreclosure Bar. *See* Opp'n to SJ at 20–21; *see* D.C. Code § 42-1903.13(b) ("The recording of the condominium instruments . . . shall constitute record notice of the existence of such lien and no further recordation of any claim of lien for assessment shall be required.").  But RFB misreads the relevant provision of the D.C. Code.  Section 42-1903.13(b) addresses the date of *record notice* of a condominium association lien, and it exempts associations from typical recording obligations.  It does not speak to the date of attachment of a lien.  The Court accordingly rejects the argument any attachment of the super-priority lien could predate the conservatorship's acquisition of the deed of trust.

2023 WL 6003527, at *5 (D.C. Super. Ct. Sep. 13, 2023); *cf. Trembling Prairie Land Co. v. Verspoor*, 145 F.3d 686, 691 (5th Cir. 1998) (analogous FDIC provision protects conservatorship liens from any action that would impair the lien or deplete its value).  Attachment of the COA's super-priority lien was thus prohibited by the Federal Foreclosure Bar.  *See Brown*, 2022 WL 7003740, at *3; *Wells Fargo Bank v. Sutcliffe*, No. 2015-CA-004100-R(RP), 2023 WL 4647581, at *4–6 (D.C. Super. Ct. May 9, 2023).  Further, the COA foreclosure sale, which purported to extinguish Fannie Mae's deed of trust altogether, was also prohibited.  *Moore*, 2023 WL 3975088, at *4; *Billups*, 2023 WL 6003527, at *5.

Where the Federal Foreclosure Bar conflicts with the D.C. Super-Priority statute, the federal statute is preemptive.  "Federal [c]ourts interpreting 12 U.S.C. § 4617(j)(3) have uniformly held that the Federal Foreclosure Bar preempts state laws that permit involuntary foreclosure on super-priority condominium liens."  *Moore*, 2023 WL 3975088 at *5 (collecting cases); *Newrez, LLC v. Francis*, No. 22-cv-00561 (APM), 2023 WL 4223749, at *1 (D.D.C. June 26, 2023) (same); *see Berezovsky*, 869 F.3d at 930; *Nationstar Mortg. LLC v. Saticoy Bay LLC, Series 9229 Millikan Ave.*, 996 F.3d 950, 958 (9th Cir. 2021) ("The Federal Foreclosure Bar preempts the Nevada superpriority lien scheme.").  This Court agrees.

Federal law preempts conflicting state law where the federal provision states a "clear and manifest purpose" to supersede state law, or where conflicting state law is an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Arizona v. U.S.*, 567 U.S. 387, 399 (2012).  RFB's argument that preemption doctrine does not apply to the D.C. Code, *see* Opp'n to SJ at 21–22, has been flatly rejected by the D.C. Circuit, *see, e.g.*, *Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.*, 642 F.2d 527, 534 n.65 (D.C. Cir. 1980) ("[P]reemption doctrine [a]ffects District of Columbia legislation no less than state enactments.").  The language

of the Federal Foreclosure Bar expressly preempts District of Columbia law. And even if it did not, conflict preemption would still apply because there is a clear conflict between the Federal Foreclosure Bar's purpose and the effect of the D.C. Code. *See Moore*, 2023 WL 3975088, at *4; *Newrez*, 2023 WL 4223749, at *1.

The Federal Foreclosure Bar prohibits attachment or foreclosure on conservatorship property "without the consent of the [FHFA]." 12 U.S.C. § 4617(j)(3). In contrast, the D.C. Code permits a condominium association's six-month super-priority lien to automatically attach and "extinguish a first deed of trust" upon foreclosure. D.C. Code § 42-1903.13. It is "impossible to reconcile" the express language of the federal and D.C. Code provisions. *Brown*, 2022 WL 7003740, at *3. Further, the D.C. Super-Priority Statute obstructs Congress's objectives in enacting the Federal Foreclosure Bar, which was to "preserve and conserve the assets and property" of Fannie Mae during the 2008 financial crisis. *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 600 (D.C. Cir. 2017); *see Sutcliffe*, 2023 WL 4647581, at *4–6. Permitting D.C. condominium associations to unilaterally foreclose under D.C. Code § 42-1903.13 would undermine Congress's objective to protect Fannie Mae's assets.

Proper relief for an unlawful foreclosure includes a declaratory judgment that the sale was void *ab initio*—a legal nullity—and that a protected lien remained a valid, secured encumbrance on conservatorship property.[5] *E.g.*, *Moore*, 2023 WL 3975088 at *5 (voiding sale and declaring "[Fannie Mae's] Deed of Trust remains a valid, secured encumbrance against the Property"); *Brown*, 2022 WL 7003740, at *4 (voiding sale and restoring Freddie Mac's lien position).

---

[5] The Court rejects RFB's contention that the prayer for relief was improperly pleaded and requested an impermissible remedy. *See* MJP at 6–8. Although the plaintiffs do not use the term of art "void *ab initio*," the amended complaint requests a "declaration . . . that the COA Sale did not extinguish the Deed of Trust, and that the Deed of Trust continued as a valid encumbrance against the Property after the COA Sale." Amd. Compl. at 20 ¶ 2. Accordingly, the Court will deny RFB's motion for judgment on the pleadings on these grounds.

The Court concludes that because the Federal Foreclosure Bar preempts the D.C. Super-Priority Statute, federal law prohibited attachment of the COA's lien and the COA foreclosure sale from involuntarily extinguishing Fannie Mae's lien.  Accordingly, the Court will grant the plaintiffs' motion for summary judgment on the quite-title claims.  It will declare the COA sale void *ab initio* and that Fannie Mae's secured first deed of trust remained unextinguished.

### B.    *Res Judicata* **Does Not Bar the Plaintiffs' Claims**

A claim is barred under *res judicata* if "there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction."  *Porter v. Shah*, 606 F.3d 809, 813 (D.C. Cir. 2010).  Here, the first element of *res judicata* is not met because there has been no "prior" litigation on the claims at issue.  *See* Opp'n to MJP at 19.  The purportedly preclusive litigation on which RFB relies has occurred within this case, and RFB offers no authority to suggest that *res judicata* bars litigation within the same action that remains pending. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979) ("[A] judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action.").

Additionally, the third element of *res judicata* is not met because the Court has not rendered any final valid judgment on the merits of the plaintiffs' claims.  RFB argues that the November 2021 stipulation of dismissal between Nationstar, FHFA, and the COA, which purported to dismiss all claims against the COA with prejudice, was a final adjudication on the merits of the quiet-title claims.  MJP at 15; Opp'n to SJ at 7; *see Stonehill v. U.S. Dep't of Just. Tax Div.*, No. 19-cv-03770 (RC), 2022 WL 407145, at *6 (D.D.C. Feb. 10, 2022) (courts are divided on whether a Rule 41(a) dismissal with prejudice can serve as final judgment for claim preclusion purposes).  But even assuming that a stipulation of dismissal with prejudice can serve as a final judgment on the merits,

no valid stipulation exists: the November 2021 stipulation had no legal effect because it was not signed by Fannie Mae, who was a party to the purportedly dismissed claims.  *See* Stipulation of Dismissal at 1; Fed. R. Civ. P. 41(a)(1)(A)(ii) (providing that "all parties who have appeared" must sign a valid stipulation).  Accordingly, *res judicata* does not bar the plaintiffs' quiet-title claims and the Court will deny RFB's motion for judgment on the pleadings.

###### C.    The COA is Not a Necessary Party to the Plaintiffs' Claims Against RFB

Federal Rule of Civil Procedure 19 provides, in relevant part, that a person "must be joined as a party if . . . in that person's absence, the court cannot accord complete relief among the existing parties; or that person claims an interest relating to the subject of the action and is so situated that disposing of the action in that person's absence may, as a practical matter impair or impede the person's ability to protect the interest; or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1).  If a necessary party cannot be joined, the court must examine the factors in Rule 19(b) to "determine whether in equity and good conscience, the action should proceed among the parties before it, or should be dismissed, the absent person being regarded as indispensable." *Cherokee Nation of Oklahoma v. Babbitt*, 117 F.3d 1489, 1496 (D.C. Cir. 1997) (quoting Fed. R. Civ. P. 19(b)).  The Rule 19 inquiry is equitable and discretionary.  *See Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1495 (D.C. Cir. 1995).

The Court finds that the COA is not a necessary party for three reasons.  First, the Court can accord complete relief between the plaintiffs and RFB on the quiet-title claims without involving the COA.  *See* Opp'n to SJ at 10–12; MJP at 9; Fed. R. Civ. P. 19(a)(1)(A).  A declaratory judgment that the COA sale was void *ab initio* resolves the title dispute in its entirety.  RFB can still pursue its surviving counterclaim against the COA to recover its purchase price and

assessment payments.[6]  The purchase-price counterclaim is separate from the quiet-title issue and gives rise to no reciprocal rights or duties between the COA and the plaintiffs.  The D.C. Superior Court has uniformly held that the seller in a foreclosure sale voided under Federal Foreclosure Bar need not be joined as a party to a quiet-title dispute.  For example, in *Moore*, Fannie Mae's servicer moved to quite title against the purchaser in a condominium association's foreclosure sale.  *Moore*, 2023 WL 3975088, at *1–2.  The *Moore* court rejected the purchaser's argument that the association was a necessary party under D.C. civil procedure rules, because "the Court can accord complete relief between [Fannie Mae's servicer] and [the purchaser]," and because "[n]othing bars [the purchaser] from bringing a separate action against the Condominium Association."  *Id.* at 6. The *Sutcliffe* and *Billups* courts held the same.  *See Sutcliffe*, 2023 WL 4647581 at *6; *Billups*, 2023 WL 6003527, at *5.

RFB's reliance on recission decisions in other contexts is inapposite because, unlike in those cases, the COA has no remaining cognizable interest in the disputed Property title.  *See* Opp'n to SJ at 13–14; MJP at 11.  In *Naartex Consulting Corp. v. Watt*, the D.C. Circuit explained that entities then holding "royalty interests, assignments, or interests in the title of federal leases" were necessary parties to an action seeking to cancel the leases.  722 F.2d 779, 788 (D.C. Cir. 1983).  But here, the COA holds no interest in the Property regardless of the Court's disposition. If the Court were to conclude the COA sale were valid, RFB would be declared the title owner. On the other hand, if the Court declares the sale void *ab initio* on preemption grounds, as it does here, that finding necessarily implies that the COA was never entitled to a super-priority lien because Fannie Mae's secured first deed of trust guaranteed the plaintiffs' title ownership.  In

---

[6] No party disputes that RFB's crossclaim against the COA survives the amended complaint. "[W]hen the original claim against a party is dismissed by the plaintiff, cross-claims previously interposed against that party remain."  *Novak v. Cap. Mgmt. & Dev. Corp.*, No. 01-cv-00456 (HHK/JMF), 2003 WL 27383676, at *3 (D.D.C. Mar. 31, 2003) (collecting cases).

either scenario, the COA holds no interest in the Property or its title,[7] so the Court can award full relief in the COA's absence. Further, the alleged implications for Canada's rights are irrelevant because, contrary to the defendants' contention, she would not be "revested with title to the Property." Reply ISO MJP at 6. As already discussed, Fannie Mae would retain title ownership.

Second, the absence of the COA does not "impair or impede" its ability to protect its interests. *See* Fed. R. Civ. P. 19(a)(1)(B)(i). RFB contends that resolution of the quiet-title claims may create rights of action for RFB against the COA, including for "disgorgement," "breach of contract, fraud, and negligent misrepresentation." Opp'n to SJ at 12; MJP at 10. But the COA is not impaired in its ability to defend against those claims because it remains free to litigate its derivative liability through RFB's crossclaim. Indeed, the parties' joint status report expressly reserves the COA's right to file dispositive motions and otherwise defend against that crossclaim. Dkt. 60, at 2. Contrary to RFB's assertion, Opp'n to SJ at 12–13, the Court is aware of no legal authority that requires it to award RFB "the purchase price that was paid at the voided sale" contemporaneous with the resolution of the quiet-title claims. Other courts have resolved identical claims without simultaneously awarding the return of purchase price. *E.g.*, *Brown*, 2022 WL 7003740, at *4 (granting partial summary judgment on quiet-title claim without resolving purchase price issue). Likewise, the Court will reserve ruling on the return of RFB's purchase price and other assessments pending the parties' full briefing on that issue.

---

[7] Declaring the COA sale void *ab initio* does not require reinstatement of the COA's super-priority lien *nunc pro tunc*, contrary to RFB's assertion, *see* Opp'n to SJ at 13; MJP at 9. As the Court has explained, the Federal Foreclosure Bar prohibits any "attachment" that impairs the value of protected conservatorship property. 12 U.S.C. § 4617(j)(3). Federal law precluded the attachment of the super-priority lien to begin with, so the Court has no grounds for reinstatement of that lien. *Cf. Hill v. Imperial Sav.*, 852 F. Supp. 1354, 1373 (W.D. Tex. 1992) ("[Analogous FDIC provisions] prohibit the *attachment* of any involuntary lien to property held by a federal receiver." (emphasis added)); *Nassirpour v. FDIC for IndyMac Bank, FSB.*, 2009 WL 10674165, at *3 (C.D. Cal. Oct. 13, 2009) (same).

Third, the COA's absence will not leave any "existing party subject to a substantial risk of incurring . . . inconsistent obligations."   Opp'n to SJ at 13; MJP at 10; *see* Fed. R. Civ. P. 19(a)(1)(B)(ii).  Though RBF argues the Court's ruling could create inconsistencies that "could be monetary, relate to title of the Condo Unit, and could concern lien priority for the Condo Unit," Opp'n to SJ at 13, it identifies no specific inconsistency apart from the return of the purchase price and assessments.  RFB's crossclaim on that issue will also be resolved by this Court, reducing any risk of inconsistent obligations.

Accordingly, the Court concludes that the COA is not a necessary party to the quiet-title claims between RFB and the plaintiffs, and it will deny RFB's motion for judgment on the pleadings.

## CONCLUSION

For the reasons explained, the Court denies the defendant's Motion for Judgment on the Pleadings, Dkt. 63, and grants the plaintiffs' partial Motion for Summary Judgment, Dkt. 62, on the quiet-title claims.  The Court declares the foreclosure sale held on September 23, 2014 void *ab initio* and that Fannie Mae's deed of trust remained a valid, secured encumbrance against the Property.  A separate order consistent with this decision accompanies this memorandum opinion.

September 30, 2024

DABNEY L. FRIEDRICH
United States District Judge